# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| LAWYERS TITLE INSURANCE | : | |
| CORPORATION and LORRAINE HALICA, | : | |
| | : | No. 3:07cv804 (MRK) |
| Defendants and Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK SINGER, | : | |
| | : | |
| Third-Party Defendant. | : | |

## <u>RULING AND ORDER</u>

Pending before the Court are Third-Party Defendant Mark Singer's Motion to Set Aside Verdict [doc. # 333] and Corrected Motion to Set Aside Verdict [doc. # 334]. Mr. Singer moves as follows: (1) to set aside the verdict and enter judgment in his favor, or grant a new trial, on the basis that the Third-Party Plaintiffs failed to present evidence on which they were entitled to indemnification as a matter of law, pursuant to Rule 50(b) of the *Federal Rules of Civil Procedure*; and, in the alternative; (2) to set aside the verdict and grant a new trial, under Rule 59 of the *Federal Rules of Civil Procedure,* because of errors in the jury charge, the Court's refusal to allow Mr. Singer to offer Plaintiff Finance California's expert Richard Case as his own expert witness, the Court's overruling of certain objections to the Third-Party Plaintiffs' exhibits, and the Court's refusal to grant a continuance. Both of Mr. Singer's post-judgment motions are DENIED.

## I.

The Court assumes the parties' familiarity with the factual and procedural background of

this case, and it will only briefly describe that background here. The Third-Party Plaintiffs' indemnification claim is based on their liability for a financial injury suffered by the original Plaintiff, Finance California, Inc. ("Finance California") as a result of a commercial real estate transaction ("the Loan Transaction") in which Finance California loaned $3 million to the buyer ("Buyer") of the Delaney House Restaurant and Country Inn & Suites in Holyoke, Massachusetts ("the Delaney House property"). Finance California's loan to the Buyer was premised on Finance California's belief that the Buyer was contributing cash to the purchase, when in fact the money attributed to the Buyer on its closing statement was a credit for a Hotel Management Consulting Agreement ("Consulting Agreement") between the Buyer and the seller of the property ("Seller") – an agreement which was, in fact, wholly illusory and which was terminated the same day that the Loan Transaction was completed.

Finance California sued Defendant/Third-Party Plaintiff Lawyers Title Insurance Company ("LTIC") and its employee Defendant/Third-Party Plaintiff Lorraine Halica based on their role as FCI's escrow agent for the Loan Transaction. Finance California asserted claims against LTIC and Ms. Halica for, *inter alia*, breach of fiduciary obligation, breach of the covenant of good faith and fair dealing, and breach of contract. LTIC and Ms. Halica, in turn, impleaded the Buyer's counsel, Mark Singer, and the Seller's counsel, Cooley, Shrair PC and David Shrair. LTIC and Ms. Halica's Third-Party Complaint against Mr. Singer asserted a claim of common law indemnification under Connecticut law. On June 22, 2010, the Court denied several motions for summary judgment filed by the parties. Ten days before trial was scheduled to begin, all parties except Mr. Singer reached a settlement. Following the settlement, the sole remaining claim was LTIC and Ms. Halica's common law indemnification claim against Mr.

Singer. Trial commenced on February 8, 2011, and the jury returned a verdict for the Third-Party Plaintiffs on February 10, 2011.

## II.

The Court first considers Mr. Singer's Rule 50 motion. Judgment as a matter of law in favor of Mr. Singer under Rule 50(b) is appropriate only if (1) there is no "legally sufficient evidentiary basis" on which a reasonable jury could have found for the Third-Party Plaintiffs on a particular issue, and (2) the Third-Party Plaintiffs' claim against Mr. Singer could not be maintained without a favorable finding on that issue. Fed. R. Civ. P. 50(a)(1). A Rule 50 motion should be denied unless:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.

*Lavin-Mceleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001) (citation and alterations omitted). In other words, a Rule 50 motion for judgment as a matter of law may be granted "only when, drawing all reasonable inferences regarding the weight of the evidence and the credibility of witnesses in favor of the non-movant, a reasonable jury could only have found for the movant." *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 326 (2d Cir. 2010) (quotation marks and citation omitted).

In this case, the jury was asked to decide whether the Third-Party Plaintiffs were entitled to common law indemnification for their settlement of the breach of fiduciary obligation claim brought by Finance California. To succeed on their common law indemnification claim, the Third-Party Plaintiffs had to prove by a preponderance of evidence that Mr. Singer was the active or primary tortfeasor, and that Ms. Halica and LTIC were mere passive or secondary

tortfeasors. Specifically, the Third-Party Plaintiffs had to establish four elements: (1) that Mr. Singer committed fraud; (2) that Mr. Singer's fraud was the direct and immediate cause of Finance California's injury; (3) that Mr. Singer, rather than the Third-Party Plaintiffs, had control over the events that led to Finance California's injury; and (4) that the Third-Party Plaintiffs did not know of Mr. Singer's wrongful conduct, had no reason to anticipate his wrongful conduct, and reasonably relied on Mr. Singer not to engage in the wrongful conduct. To establish the first element of their common law indemnification claim, the Third-Party Plaintiffs also had to satisfy all the elements of a claim of common law fraud, which required proof by clear and convincing evidence. *See, e.g., Goldstar Med. Servs. v. Dep't of Soc. Servs.*, 288 Conn. 790, 819 (2008) ("[T]he clear and convincing standard is the appropriate standard of proof in common law fraud cases." (emphasis and citation omitted)).

Mr. Singer argues that he is entitled to judgment as a matter of law on two grounds:

1. The evidence was clear and uncontroverted that the Third-Party Plaintiffs, rather than Mr. Singer, had control over the situation that led to Finance California's injury; that it was Ms. Halica's acts that were the direct and immediate cause of Finance California's injury; and that Ms. Halica did not rely on Mr. Singer to act properly and could not have reasonably relied on Mr. Singer to act properly – in sum, that Ms. Halica was not a mere passive tortfeasor; and

2. The evidence was clear and uncontroverted that Ms. Halica herself was not going to pay the amount of the settlement, and thus she had no loss for which she could be indemnified.

The Court rejects both of those arguments.

## A.

The first ground asserted in support of Mr. Singer's Rule 50 motion is premised in part on Mr. Singer's legal argument that if Ms. Halica had the ability to disclose the Buyer's credit, she could not have been a passive tortfeasor, and thus the Third-Party Plaintiffs cannot be entitled to common law indemnification for her actions. The Court rejected that premise in its order denying Mr. Singer's motion for summary judgment and its order denying Mr. Singer's motion for reconsideration of the Court's ruling on Mr. Singer's motion for summary judgment. *See* Ruling and Order on Parties' Mots. for Summary J. [doc. # 166] at 6; Ruling and Order Denying Third-Party Def. Mark Singer's Mot. for Reconsideration [doc. # 182] at 2. As the Court explained in its previous orders, if the jury determined that Ms. Halica was purposely duped by Mr. Singer, the jury could find that Mr. Singer was the active tortfeasor, and that Ms. Halica's negligence was passive. If the jury reached that conclusion, the Third-Party Plaintiffs would be entitled to common law indemnification.

While there was some new evidence presented at trial that was favorable to Mr. Singer's position, there was also a host of new evidence that was unfavorable to Mr. Singer and that bolstered the Third-Party Plaintiffs' claim. The evidence favorable to Mr. Singer's position included Ms. Halica's testimony that Mr. Singer's request that she not show the credit was not an ordinary one, *see* 2/9/2011 Trial Tr. [doc. # 328] at 247:25; and that Ms. Halica could have disclosed the credit to Finance California, in spite of Mr. Singer's instructions, "if [she] thought there was a reason to." *Id.* at 250:7. But Ms. Halica also testified that she "didn't believe [Mr. Singer's] request to be unusual," *id.* at 247:20, and that based on the information she had at the time, she did not see a reason to inform Finance California that the contribution attributed to the

Buyer on its closing statement was in fact a credit for a consulting agreement, rather than cash. *See id.* at 250:8, 252:3-7. Ms. Halica repeatedly testified that she "didn't think [disclosing that information] was necessary because [she] didn't see anything wrong" and "didn't have all the facts to make the determination there was something wrong going on." *Id.* at 257:12-14. Ms. Halica emphasized that she had been instructed by Mr. Singer not to show the credit, *see id.* at 247:14, 265:5-6; and that she "was dealing with [Mr.] Singer in good faith, honesty, truth, and . . . believed [she] was getting that same respect back at the time." *Id.* at 247:14-17. The jury heard Mr. Singer testify that on three separate occasions, he instructed or reminded Ms. Halica to take actions that served to conceal the fact of the credit from Finance California. *See* 2/8/2011 Trial Tr. [doc. # 327] at 79:25-80:12. Mr. Singer admitted that as an escrow agent, Ms. Halica had obligations to all the parties to the Loan Transaction – including Mr. Singer's clients – and that it was part of her duties to take instructions from Mr. Singer. *See id.* at 71:24-72:5.

Both Ms. Halica's and Mr. Singer's testimony supported the conclusion that Ms. Halica was the passive tortfeasor, and Mr. Singer the active one. Ms. Halica testified that she did not know and had no reason to know that showing a cash contribution rather than a credit on the Buyer's closing statement was a material alteration, *see id.* at 258:3-259:2; and that she "had no knowledge that there was anything being hidden" from Finance California. *Id.* at 270:6-7. Ms. Halica also testified that if she had even an inkling that the Consulting Agreement was illusory, or that she was being asked to facilitate a fraud, she would have contacted her superiors and not gone forward with the closing. *See id.* at 288:7-14. Moreover, Mr. Singer testified that he *was* aware of Finance California's requirement that the Buyer contribute equity to the purchase, *see* 2/8/2011 Trial Tr. [doc. # 327] at 92:12-14, 95:17-96:5, and that his instructions to Ms. Halica

were motivated in part by a concern that Finance California would find out about the Consulting Agreement. *See id.* at 73:23-74:6. Mr. Singer admitted that he sent an email to Ms. Halica that stated affirmatively that the information which he had asked her to keep confidential "shouldn't matter" to the lender – and would only matter to a lender that was "a vulture." *Id.* at 78:6-12. It was uncontroverted that Mr. Singer himself – who knew about Finance California's equity requirement – communicated the misleading closing statement to Finance California's representatives without telling Finance California or its attorney about the credit. *See id.* at 54:15-20; 76:3-10; 2/9/2011 Trial Tr. [doc. # 328] at 281:7-9. Mr. Singer's testimony clearly demonstrated that he, rather than Ms. Halica, was in total control of the situation, that he manipulated the situation for his client's benefit, and that he purposely kept Ms. Halica in the dark. *See* 2/8/2011 Trial Tr. [doc. # 327] at 31:10-16, 45:4-6, 49:1-20, 54:4-8, 66:18-22, 71:15-20, 72:3-6, 75:6-22, 78:6-18, 81:10-13; 82:24-83:5, 91:3-9, 95:1-24, 107:11-21; 116:10-117:9, 119:9-15; 157:10-158:12. When Third-Party Plaintiffs' counsel suggested that Mr. Singer "just kept leading [Ms. Halica] on" and that Ms. Halica was "just marching along with [his] instructions about how to show [the credit]," Mr. Singer admitted, "Well, I guess that's true." *Id.* at 91:6-8.

In sum, there was overwhelming evidence to support the conclusions that only Mr. Singer – and not Ms. Halica – was aware that the Buyer's closing statement concealed a material fact; that Ms. Halica failed to inform Finance California of that fact because she was following instructions from Mr. Singer, in accordance with her duties; and that Mr. Singer concealed material facts from Ms. Halica herself. The jury weighed the evidence and came to the conclusion that Ms. Halica's acts and omissions did not rise above the level of passive

negligence and that Mr. Singer was the active wrongdoer. Specifically, the jury found that the Third-Party Plaintiffs had established by *clear and convincing* evidence that Mr. Singer committed fraud; and that the Third-Party Plaintiffs had established by a preponderance of evidence that Mr. Singer's fraud was the direct and immediate cause of Finance California's injury, that Mr. Singer rather than the Third-Party Plaintiffs was in control of the events that led to Finance California's injury, and that Ms. Halica had reasonably relied on Mr. Singer not to engage in fraud. "[D]rawing all reasonable inferences regarding the weight of the evidence and the credibility of witnesses in favor of [LTIC and Ms. Halica]," *Schneider*, 607 F.3d at 326, the evidence was more than sufficient to support the jury's verdict. Indeed, the evidence supporting the jury's conclusions was overwhelming. The Court rejects Mr. Singer's arguments to the contrary.

**B.**

Mr. Singer's second Rule 50 argument – that Ms. Halica suffered no loss for which she could be indemnified – is also without merit. Finance California asserted its claims against Ms. Halica in her capacity as an employee of LTIC. *See* 2/9/2011 Trial Tr. [doc. # 328] at 298:14-17. The testimony at trial confirmed that LTIC made its $1.7 million settlement payment on its and Ms. Halica's behalf. *See id.* at 282:17-20. There was no evidence to the contrary. As the Court emphasized when it rejected Mr. Singer's original Rule 50 motion, Ms. Halica "was a party [to the settlement] and monies were paid on her behalf as well as [on behalf of] [LTIC]." *Id.* at 383:2-3. The Court sees no reason to revisit its conclusion that the settlement was paid on Ms. Halica's behalf, that Ms. Halica was in the case as a representative of LTIC, and that to the extent Ms. Halica recovered any money on the Third-Party Plaintiffs' indemnification claim against Mr.

Singer, that recovery would be in her capacity as a representative of LTIC. *See id.* at 393:15-19.

The Court thus DENIES Mr. Singer's Rule 50 motion for judgment as a matter of law or in the alternative, a new trial.

### III.

The Court next considers Mr. Singer's Rule 59 motion. A motion for a new trial pursuant to Rule 59 "ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Kosmynka v. Polaris Indus.*, 462 F.3d 74, 82 (2d Cir. 2006) (citation, alterations, and quotation marks omitted). "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). However, as this Court has previously noted, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Svege v. Mercedes-Benz Credit Corp.*, No. 3:01cv1771 (MRK), 2004 U.S. Dist. LEXIS 21099 (D. Conn. Sept. 28, 2004) (quoting *Sequa Corp. v. GBJ Corp.*, 159 F.3d 136, 144 (2d Cir. 1988)) (quotation marks omitted).

Mr. Singer claims that he is entitled to a new trial pursuant to Rule 59 for several reasons, which the Court will discuss in turn.

### A.

Mr. Singer's main argument in support of his motion for a new trial is that the Court's jury instruction on common law indemnification was erroneous. A jury instruction is erroneous if "[it] either fails to adequately inform the jury of the law, or misleads the jury as to a correct

legal standard." *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (citation and quotation marks omitted). "A jury instruction is proper so long as the charge correctly and sufficiently covers the case to allow the jury intelligently to decide the questions presented to it." *Bruneau v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 761 (2d Cir. 1998), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 129 S. Ct. 788 (2009). In determining whether the Court's jury instructions were erroneous, the question is "whether considered as a whole, the instructions adequately communicated the essential ideas to the jury." *United States v. Schultz*, 333 F.3d 393, 414 (2d Cir. 2003) (citation, alteration, and quotation marks omitted). "An erroneous [jury] instruction, unless harmless, requires a new trial." *United States v. Bah*, 574 F.3d 106, 114 (2d Cir. 2009) (citation and quotation marks omitted). "An error is harmless only if the court is convinced that the error did not influence the jury's verdict." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). For the reasons that follow, the Court does not believe that its instruction on common law indemnification misled the jury as to the correct legal standard or failed to adequately inform the jury on the law. Moreover, the Court is confident that even if it did err in its instruction, the error was harmless.

Mr. Singer takes issue with three aspects of the Court's instructions to the jury:

1. The Court's statement that the Third-Party Plaintiffs had to prove that Mr. Singer was "in control" of the events that led to Finance California's injury;

2. The Court's statement that if the jury found that Ms. Halica "ought to have" disclosed the credit to Finance California, then it had to enter a verdict for Mr. Singer; and

3. The Court's reference to a "consulting agreement that was illusory" in its description of "the situation" involved in the case, which Mr. Singer claims "led the jury to direct its

attention to the nature of the credit, not the mere fact of the absence of the credit." Mem. in Supp. [doc. # 333-1] at 28.

Mr. Singer's primary objection to the jury charge is that the Court misstated one of the elements of common law indemnification. The Connecticut Supreme Court has explained that common law indemnification is available only if the plaintiff can establish that it was merely a passive tortfeasor, and that it was the defendant's active negligence, rather than the plaintiff's passive negligence, that caused the injury in question. *See ATC P'ship v. Coats North America Consol., Inc.*, 284 Conn. 537, 551-552 (2007) ("[T]ortious indemnification is an action that arises between two tortfeasors, 'one, whose passive negligence resulted in a monetary recovery by the plaintiff; and a second, whose active negligence renders him liable to the first by way of reimbursement.'" (quoting *Smith v. New Haven*, 258 Conn. 56, 66 (2001)). Mr. Singer argues that the Connecticut Supreme Court has identified specific elements that a party seeking indemnification must prove, that one of these elements is "exclusive control," and that the Court "charged [that element] out of the case." Mem. in Supp. [doc. # 333-1] at 26. Mr. Singer is correct that the Connecticut Supreme Court has identified four elements that a plaintiff must prove to establish that a defendant's active negligence, rather than the plaintiff's passive negligence, was responsible for an injury. The third of these elements is that "the [alleged active tortfeasor] was in control of the situation to the exclusion of the defendant seeking reimbursement." *Smith*, 258 Conn. at 66. Mr. Singer is also correct that the Connecticut Supreme Court has referred to this third element as "exclusive control." *See, e.g.*, *Weintraub v. Richard Dahn, Inc.*, 188 Conn. 570, 573 (1982). However, the Court does not believe that its failure to utter the precise words "exclusive control" in this case was an error.

First, as the Court noted when it ruled on Mr. Singer's earlier objection to the jury instructions, the Connecticut Supreme Court cases that articulate the standard cited by Mr. Singer involved indemnification claims based on a third-party defendant's alleged negligence. The issue in those cases was exclusive control over "[a] dangerous condition that [gave] rise to [an] accident." *Skuzinski v. Bouchard Fuels*, 240 Conn. 694, 706 (Conn. 1997); *see, e.g.*, *Smith*, 258 Conn. at 59, 67 (plaintiff injured when her foot was caught in a hole as she descended a handicap ramp from the sidewalk into the street); *Weintraub*, 188 Conn. at 573 (plaintiffs' property damaged by truck delivering stone for the construction of a house and swimming pool on plaintiff's property); *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 408 (1965) (pedestrians on sidewalk struck by a portion of the front wall of a burned out building). No Connecticut Supreme Court or Appellate Court case has dealt with an indemnification claim in which the alleged passive tortfeasor was merely negligent, but the alleged active tortfeasor committed fraud. The requirement that an indemnitor be in "exclusive control of the situation" thus is tailored to claims of a different type than the one in this case.

In this case, in order to establish just the *first* element of their indemnification claim, the Third-Party Plaintiffs had to prove that Mr. Singer made fraudulent misrepresentations to Ms. Halica when she was acting as escrow agent; that Ms. Halica justifiably relied on Mr. Singer's false statements or omissions; and that Finance California was injured by its reliance on the false statements or omissions made to its escrow agent, Ms. Halica. In effect, because Mr. Singer's alleged wrongdoing was fraud, the jury had to decide that Mr. Singer *rather than* Ms. Halica was in control of the situation giving rise to Finance California's injury before it reached the element of indemnification that directly asked whether Mr. Singer was in control. The Connecticut

Supreme Court has not yet offered guidance on how the "exclusive control" element of common law indemnification should be adapted in a case in which the indemnification claim is based on the third-party plaintiff's alleged good faith reliance on instructions given by the third-party defendant, let alone in a case of alleged reasonable reliance on fraudulent misrepresentations by the third-party defendant. *See, e.g.*, *Blue Cross/Blue Shield of Conn. v. Crestwood Ford*, No. CV95-366530, 1996 Conn. Super. LEXIS 2173, at *7-*8 (Conn. Super. Ct. Aug. 15, 1995) (finding, in the absence of directly controlling Connecticut Supreme Court precedent, that a third-party plaintiff's failure to allege "exclusive control" was not fatal to its indemnification claim because the third-party complaint contained "a sufficient allegation of control of the stream of information that flowed to [the original plaintiff] to raise a claim of exclusive control"). "When confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1273 (2d Cir. 1994) (citation omitted). The Court's instruction attempted to adapt the explicit standards for common law indemnification adopted by the Connecticut Supreme Court in the context of indemnification claims based solely on alleged negligence to a type of claim the Connecticut Supreme Court has not yet considered.

Second, although the Court did not use the exact phrase "in control of the situation to the exclusion of" in its charge or on the verdict form, the instructions made clear that to find for the Third-Party Plaintiffs, the jury had to conclude that Mr. Singer – and not Ms. Halica or LTIC – was in control of the events that led to Finance California's injury. The Court explained that it was the Third-Party Plaintiffs' burden to prove that Mr. Singer was in control, and the Court set that burden against Mr. Singer's claim that the Third-Party Plaintiffs were in control:

> LTIC and Ms. Halica must also prove that Mr. Singer, as the active wrongdoer, was in control of the situation that gave rise to Finance California's injury.

> Mr. Singer alleges that LTIC and Ms. Halica were in control of the situation that gave rise to Finance California's injury and as a result, they should not be indemnified.

2/10/2011 Trial Tr. at 479:22-480:3. Moreover, almost immediately after explaining that the Third-Party Plaintiffs had to prove that Mr. Singer was in control of the situation that gave rise to Finance California's injury, the Court stated: "Thus, in order to award LTIC and/or Ms. Halica indemnification from Mr. Singer, you must find that *only* Mr. Singer*, and not* LTIC and Ms. Halica, was in a position to make Finance California aware that there was a $1.9 million credit that would result in no cash payment by the buyer at the closing." *Id.* at 480:10-15 (emphasis added). The Court's instructions thus specified that the Third-Party Plaintiffs could not prevail if the jury found that LTIC and Ms. Halica shared control with Mr. Singer. Nothing in the instructions implied the opposite. Given that the jury's analysis of the issue of control in accordance with the Court's instructions "would necessarily incorporate" a determination whether Mr. Singer had control over the situation giving rise to the plaintiff's injury to the exclusion of Ms. Halica and LTIC, it was not error for the Court to "omit the word ['exclusive'] from its instructions." *Bruneau*, 163 F.3d at 761. Contrary to Mr. Singer's suggestion, the Court did not "charge[] the [requirement that Mr. Singer be in control of the situation to the exclusion of the Third-Party Plaintiffs] out of the case." Mem. in Supp. [doc. # 333-1] at 26.[1]

For similar reasons, Mr. Singer's two other objections to the jury instructions also fail.

---

[1] The Court also notes that although the Court did not read aloud the section headings in the written jury instructions, the heading for the third element of indemnification was "Exclusive Control," which any jury member referring to that portion of the written instructions would have seen.

Mr. Singer claims that the Court was wrong to use "ought to have" rather than "could have" in the following instruction:

> If you find that, in spite of Mr. Singer's wrongful conduct, LTIC, acting through its agent Ms. Halica, ought to have disclosed to Finance California . . . that the buyer was not actually going to pay $1,769,307.55 cash to the seller . . . you must find in favor of Mr. Singer.

2/10/2011 Trial Tr. at 480:16-21. The Court used "ought to have" rather than "could have" because the former phrase more accurately conveyed the issue for the jury: whether Ms. Halica was merely a passive tortfeasor, or an active one. As the Court has already explained, this was not a typical common law indemnification claim in which both the third-party plaintiff and third-party defendant were negligent with regard to a dangerous physical condition. Rather, the jury had to determine whether the Third-Party Plaintiffs were entitled to indemnification based on the alleged fraud by Mr. Singer, despite Ms. Halica's own alleged negligence with regard to her fiduciary duties. In this context, the question of whether Ms. Halica was actively or passively negligent did not turn on whether she "could have" disclosed the information in question, but rather whether she "ought to" have disclosed it. *See, e.g.*, *United States v. Lung Fong Chen*, 393 F.3d 139, 147 (2d Cir. 2004) ("[A] district court must tailor its instructions to the facts of the case before it." (quotation marks and citation omitted)).

Mr. Singer's argument that the Court's reference to a "consulting agreement that was illusory" in its description of the situation giving rise to Finance California's injury improperly focused the jury's attention the nature of the credit is also unavailing. The Court's used the phrase in the following context:

> LTIC and Ms. Halica must also prove that Mr. Singer, as the active wrongdoer, was in control of the situation that gave rise to Finance California's injury. . . .

As framed in this case, the situation is the fact that Mr. Singer told Ms. Halica that the buyer was getting a credit for $1.9 million based on a consulting agreement that was illusory, such that the buyer was not going to be paying any additional monies at the time of the closing, and Finance California was not aware of those facts.

2/10/2011 Trial Tr. at 479:22-480:9.

First, the Court's instructions did not shift the focus from the fact of the credit to the nature of the credit. In the sentence immediately following the one in question, the Court explained that in order to award the Third-Party Plaintiffs indemnification from Mr. Singer, the jury had to find that only Mr. Singer "was in a position to make Finance California aware that there *was* a $1.9 million credit that would result in no cash payment by the buyer at the closing." *Id.* at 480:12-15 (emphasis added). The Court again focused the jury's attention on the fact of the credit, rather than the nature of the credit, when it told the jury that if it found that Ms. Halica nonetheless "ought to have disclosed . . . that the buyer was not actually going to pay $1,769,307.55 cash to the seller" it had to find for Mr. Singer. *Id.* at 480:17-21. Second, the Court's reference to "a consulting agreement that was illusory" in the paragraph quoted above was entirely appropriate. The Court construed "the situation that gave rise to Finance California's injury" in the context of instructing the jury that it had to decide whether Mr. Singer, rather than the Third-Party Plaintiffs, was "in control." *See id.* at 479:22-480:21. The fact that the Consulting Agreement had no value – which Mr. Singer knew and Ms. Halica did not know – was relevant to the question of who had "control of the situation."

The Court is confident that its instructions on common law indemnification were not erroneous. "[T]aken as a whole," the Court's instructions to the jury did not "g[ive] a misleading impression" or inadequately state the law. *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty*

*Corp.*, 540 F.3d 133, 139 (2d Cir. 2008) (citation omitted; alteration in original). Therefore, the charge was proper and no new trial is warranted on that ground. *See id.*

Finally, even if the Court erred in its instruction, the error was harmless. Although "[a]n error is harmless only if the court is convinced that the error did not influence the jury's verdict," *Gordon*, 232 F.3d at 116, "harmless error analysis does not require absolute certainty with respect to what effect the error had upon the verdict." *Bruneau*, 163 F.3d at 760. All of Mr. Singer's specific objections to the language used in the jury charge are part of an argument that the Court failed to adequately instruct the jury that to find for the Third-Party Plaintiffs, it had to conclude that Mr. Singer was in "exclusive control" – that is, that Mr. Singer was in control of the situation giving rise to Finance California's injury, to the exclusion of LTIC and Ms. Halica. As the Court has already explained with regard to Mr. Singer's Rule 50 motion, the jury was presented with overwhelming evidence that Mr. Singer was in control of the situation to the exclusion of the Third-Party Plaintiffs. That evidence included Mr. Singer's *own testimony*, in which he admitted that he was aware that Finance California required the Buyer to contribute equity to the purchase; that his instructions to Ms. Halica reflected a concern that Finance California might find out about the credit; that he kept Ms. Halica in the dark with regard to material facts; that Ms. Halica was obligated to take instructions from him; and that Ms. Halica was "just marching along with [his] instructions about how to show [the credit]." 2/8/2011 Trial Tr. [doc. # 327] at 91:6-8; *see id.* at 31:10-16, 45:4-6, 49:1-20, 54:4-8, 66:18-22, 71:15-20, 72:3-6, 75:6-22, 78:6-18, 81:10-13; 82:24-83:5, 91:3-9, 95:1-24, 107:11-21; 116:10-117:9, 119:9-15; 157:10-158:12. Given the overwhelming evidence of Mr. Singer's exclusive control over the situation giving rise to Finance California's injury, and of the Third-Party Plaintiffs' lack

of control, any error the Court may have made in its instruction with regard to that element of common law indemnification was harmless, as it could not have influenced the jury's verdict. *See, e.g.*, *United States v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996) (holding that "the district court's failure to instruct the jury that [the defendant] must have been involved in the 'operation or management' of the enterprise could not have influenced the jury's verdict on . . . RICO violations" because, given the evidence at trial, "the jury only could have found that [the defendant] either was the leader of the crew or was not a crew member at all"); *United States v. Amuso*, 21 F.3d 1251, 1261 (2d Cir. 1994) (holding that "the court's improper instruction d[id] not require reversal of the murder related charges because the error was harmless in light of the overwhelming evidence of [the defendant's] guilt").

## B.

Mr. Singer's second argument in support of his Rule 59 motion is that the Court should have allowed the expert witness Richard Case to testify. Mr. Case was an expert disclosed by Finance California, the original Plaintiff in this case. However, following the settlement between Finance California and all of the Defendants and Third-Party Defendants save Mr. Singer, Finance California was no longer a party to the case. Because the Court was skeptical of the propriety of allowing Mr. Singer to offer expert testimony from an expert neither he nor any other current party to the case had disclosed, the Court asked Mr. Singer's counsel to direct the Court to a district court case or circuit court case standing for the proposition that Mr. Singer could, at the time of trial, appropriate the expert of someone who had settled out and was no longer a party to the case. The Court also told Mr. Singer's counsel that it would not allow him to present Mr. Case's deposition testimony in lieu of live testimony by Mr. Case himself. The Court

never issued a ruling barring Mr. Singer from calling Mr. Case as a live witness. Indeed, the Court said, "If Mr. Case were to sign on to come here and testify live, [the Court] might consider it." 2/8/2011 Trial Tr. [doc. # 327] at 218:8-9.

As of the first day of the trial, though, Mr. Singer's counsel admitted that he had "not yet been able to get Mr. Case to agree to come." *Id.* at 218:45. Regardless, Mr. Singer has not demonstrated that – or even explained how – the Court's failure to grant his motion to introduce Mr. Case's testimony resulted in a "miscarriage of justice" or caused the jury to reach a "seriously erroneous result," and thus Mr. Singer is not entitled to a new trial on that ground. *Kosmynka*, 462 F.3d at 82.

## C.

Mr. Singer's third argument in support of his Rule 59 motion is that the Court incorrectly overruled Mr. Singer's objections to the introduction of exhibits that dealt with Mr. Singer's participation in the scheme to allocate to the purchase price of the property $1.9 million of a Consulting Agreement that Mr. Singer knew would be terminated. Mr. Singer argues that the evidence he sought to exclude was not relevant to "the issue in this case." Mem. in Supp. [doc. # 333-1] at 31. The indemnification claim against Mr. Singer was premised on the allegation that Mr. Singer committed fraud in his dealings with Ms. Halica while she was acting as the escrow agent for Finance California and the other parties to the Loan Transaction. The exhibits to which Mr. Singer objected were clearly relevant to the Third-Party Plaintiffs' indemnification claim, insofar as that claim was premised on Mr. Singer's alleged fraud, and the exhibits' relevance outweighed any danger of unfair prejudice to Mr. Singer. Therefore, Mr. Singer's third argument in support of his Rule 59 motion is without merit.

**D.**

Mr. Singer's fourth argument in support of his Rule 59 motion is that the Court incorrectly, and in abuse of its discretion, refused to grant Mr. Singer's motion for a continuance following the settlement among the Plaintiff, the Defendants, and two of the Third-Party Defendants. This Court has "broad discretion to grant or deny a motion for a continuance." *United States v. Cusack*, 229 F.3d 344, 349 (2d Cir. 2000) (citation omitted). In this case, all claims except for the indemnification claim against Mr. Singer were settled ten days before the trial was scheduled to begin. As the Court has previously noted, the settlement vastly simplified the issues for trial. The only new element introduced by the settlement was LTIC's and Ms. Halica's burden to establish that the settlement was reasonable. Five days before the trial was scheduled to begin, LTIC and Ms. Halica identified two witnesses who would testify with regard to that issue, and the Court gave Mr. Singer the opportunity to depose those witnesses, which he did. The Court also granted Mr. Singer's motion to prevent the Third-Party Plaintiffs from offering expert testimony on the reasonableness of the settlement.[2] Moreover, Mr. Singer's counsel was already highly familiar with the settlement. The settlement was negotiated with the assistance of Magistrate Judge William Garfinkel over the course of several settlement

---

[2] Mr. Singer's now alleges that because the two new witnesses were attorneys, "the fear expressed in the continuance motion that the testimony would become expert testimony on the reasonableness of the settlement became a reality." Mem. in Supp. [doc. # 333-1] at 34. Mr. Singer cites no specific testimony in support of that allegation, and during the testimony of the two witnesses, Attorneys Kimball Hunt and Kenneth Aran, Mr. Singer's counsel objected to only one question – a question that asked Mr. Hunt why he did not sue the Buyer on behalf of Finance California, which Mr. Singer's counsel claimed was not relevant. 2/9/2011 Trial Tr. [doc. # 328] at 299:8-12. Mr. Singer's counsel also objected to only one answer during the two witnesses' testimony  – Mr. Hunt's description of the events underlying Finance California's claim, which counsel argued was not responsive to his question. *Id.* at 338:12-17.

conferences in which Mr. Singer's counsel participated.

In his reply brief, Mr. Singer argues that before the settlement, it would have been the Plaintiff's burden to prove that the Third-Party Plaintiffs breached their fiduciary obligations to Finance California, and that "[i]f [the Plaintiff] succeeded it would have proved the defense elements necessary to defeat indemnification." Reply Br. [doc. # 338] at 10. There is no support for that claim. As the Court has already explained, if Ms. Halica breached her fiduciary duty by negligently failing to disclose the credit, a jury could find (as the jury did) that her negligence was passive. Mr. Singer did not "suddenly ha[ve] new issues and burdens of proof" as a result of the settlement. *Id.* at 9.

Although Mr. Singer asserts that the denial of a continuance deprived him of procedural due process, *see* Mem. in Supp. [doc. # 33-1] at 34, he does not offer any support for that bald assertion. Mr. Singer claims that additional time would have allowed him to procure expert witnesses and conduct more thorough depositions of the Third-Party Plaintiffs' new witnesses, but he does not give any indication of what the additional evidence would have been. Moreover, he has not shown that such evidence "would likely have altered the outcome of the proceeding." *Amouri v. Holder*, 572 F.3d 29, 36 (1st Cir. 2009); *see* Mem. in Supp. [doc. # 333-1] at 33 (quoting *id.*). The Court's failure to grant Mr. Singer's motion for a continuance was well within its discretion, and Mr. Singer is not entitled to a new trial on that ground.

The Court therefore DENIES Mr. Singer's motion for a new trial pursuant to Rule 59.

## IV.

For the foregoing reasons, Mr. Singer's Corrected Motion to Set Aside Verdict [doc. # 334] is DENIED, and his Motion to Set Aside Verdict [doc. # 333] is DENIED as moot.

IT IS SO ORDERED,


/s/        Mark R. Kravitz
United States District Judge


**Dated at New Haven, Connecticut: May 16, 2011.**